**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Douglas BLACKBURN,
Defendant–Appellant.**

**No. 90–5538.**

United States Court of Appeals,
Fourth Circuit.

Argued May 10, 1991.

Decided Aug. 2, 1991.

As Amended Aug. 20, 1991.

George Alan DuBois, Jr., Asst. Federal Public Defender, argued (William E. Martin, Federal Public Defender, on brief), Raleigh, N.C., for defendant-appellant.

John Douglas McCullough, Senior Litigation Counsel, argued (Margaret Person Currin, U.S. Atty., on brief), Raleigh, N.C., for plaintiff-appellee.

Before HALL, Circuit Judge, STAKER, District Judge for the Southern District of West Virginia, sitting by designation, and KELLAM, Senior District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

Blackburn appeals the sentence imposed pursuant to his conviction for possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d), 5871. We vacate the sentence and remand for resentencing.

### I.

In the course of a reverse sting operation, Blackburn was approached by a federal agent who asked whether he might be interested in purchasing weapons or hand grenades. Blackburn indicated that he was interested in grenades, and he later told the agent that he was acting as a middleman for a Mr. Smith. The two also discussed using a grenade to murder an undercover policeman who had previously arrested Blackburn. Blackburn and the agent agreed on a price of $50 per grenade.

The agent later contacted Blackburn to say that he had obtained a case of thirty grenades, and the two met to make the transfer. After removing two grenades from the case for the stated purpose of murdering the policeman, the agent placed the case of grenades in the bed of Blackburn's truck. Only the two grenades removed by the agent were "live"; the other twenty-eight lacked powder and were incapable of being detonated. As Blackburn left in his truck, he was arrested.

Blackburn was indicted for possession of a single grenade and for possession of a pistol (18 U.S.C. § 924(c)). He entered into a plea agreement under which he agreed to

plead to a single count of possession of an unregistered destructive device.[1] On October 9, 1990, he was sentenced under the Guidelines to forty-six months. The guideline calculations were as follows:

| | |
|---|---:|
| Base offense level [2K2.2(a)(1)] | 16[2] |
| Acceptance of responsibility [3D1.1] | − 2 |
| | 14 |
| Specific offense characteristics | |
| [2K2.2(b)] (based on 30 grenades) | + 5 |
| Total offense level | 19 |
| Criminal History | III |
| Guideline range | 37–46 months |

On appeal, Blackburn raises only the issue of the offense-level increase of 5 under U.S.S.G. § 2K2.2(b).

### II.

■ The issue before us is clearly defined: did the district court err as a matter of law or misapply the guidelines in counting the twenty-eight inert grenades as "firearms" as that term is used in the "specific offense characteristics" subsection of U.S.S.G. § 2K2.2? 18 U.S.C. § 3742(a)(1), (2). Under § 2K2.2(b), the base offense level increases as the number of firearms possessed increases. The Application Notes explain that "the definition of firearm used in this section is that set forth in ... 26 U.S.C. § 5845(a)...." Under 26 U.S.C. § 5845(a), the term firearm includes a "destructive device." "Destructive device," in turn, is more precisely defined in 26 U.S.C. § 5845(f) to include "(1) any explosive ... (B) grenade" and "(3) any combination of parts either designed or intended for use in converting any device into a destructive device ... and from which a destructive device may be readily assembled." The district court believed that this definition was broad enough to cover the twenty-eight inert grenades, apparently on the ground that the inert grenades could be readily activated by the addition of powder.[3] Our analysis is informed by two general propositions. First, the definition of "destructive device" remains the same both for cases involving

---

1. Prior to sentencing on the federal charge, Blackburn was convicted in state court of solicitation of murder and was sentenced to ten years.

2. Effective November 1, 1990, this base offense level is 18. U.S.S.G. App.C., Amend. 333.

3. The undisputed possession of the two live grenades is immaterial under § 2K2.2(b); the offense-level increases apply to the possession of three or more firearms.

§ 5861 indictments or convictions and for sentences involving U.S.S.G. § 2K2.2(b); thus, we are able to draw on a wealth of case law involving § 5861 convictions. *See generally* Annotation, *Validity, Construction and Application of Provisions of National Firearms Act (26 U.S.C.S. § 5845(f)) Omnibus Crime Control and Safe Streets Act (18 U.S.C.S. § 921(a)(4)) Defining "Destructive Device,"* 25 A.L.R. Fed. 344 (1975). Second, the rule of lenity applies to the interpretation of the Sentencing Guidelines in the same manner as it applies to the interpretation of criminal statutes. *United States v. Rivers,* 929 F.2d 136, 139 (4th Cir.1991).

### A.

Although both parties agree that the issue involves a pure matter of law subject to *de novo* review, a factual issue is raised in the government's brief. At the sentencing hearing, the government's response to Blackburn's arguments was that the twenty-eight inert grenades "are still weapons and could have been made easily to explode by the addition of some other factors here." The district court added that "all you have to do is add the powder and the fragments to make an inert grenade an active grenade ...," a statement in which the government concurred. On appeal, the government contends that the fact that two of the grenades contained powder is sufficient to bring each of the thirty grenades within the ambit of "a destructive device," *i.e.,* explosive grenade, because that powder could have been redistributed evenly to create thirty live grenades. However, no evidence was presented to support this claim. The government's belated explanation is too little and too late.

The qualification of the twenty-eight inert grenades as "destructive devices" was clearly a factor that enhanced Blackburn's sentence. To the extent that a factual question was implicated, the government had the burden of establishing by a preponderance of the evidence that this factor was applicable. *United States v. Urrego–Linares,* 879 F.2d 1234, 1239 (4th Cir.), *cert. denied,* ——— U.S. ———, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). Moreover, the government's request for the application of an aggravating factor to the guideline sentence calculation

> must be based on some evidence. The [government] cannot meet [its] burden simply by offering conclusory statements.... While the finding of the applicability of an aggravating factor is protected on appeal by the clearly erroneous standard of review, this protection does not extend to a determination made without any factual foundation.

*United States v. Gordon,* 895 F.2d 932, 936 (4th Cir.), *cert. denied,* ——— U.S. ———, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990).

In *Gordon,* the district court concurred in the recommendation contained in the presentence report and granted a two-level decrease in the offense level on the grounds that the defendant was a "minimal participant" under U.S.S.G. § 3B1.2(b). The government appealed this ruling, and we remanded for resentencing without the two-level decrease because there was no evidence to support the factual finding that Gordon was a "minimal participant."

In the case before us, we are unable to determine from the record whether one-fourteenth of the powder in one of the live grenades would be sufficient to arm one of the inert grenades.[4] It is beyond dispute that a certain minimum level of powder would be needed to transform an unarmed grenade into an "explosive grenade." *See United States v. One 1972 Chevrolet El Camino Pickup Truck,* 369 F.Supp. 755 (D.Neb. 1973) (fully assembled practice grenade with enough powder to produce a loud "pop", but not enough to cause fragmentation, held not to be a "destructive device"). The requisite showing was not made by the government, and there is no hint in the record that the government intended to rely on anything beyond the conclusory statements offered at the sentencing hearing.

### B.

A second issue, one involving statutory construction (and, as such, a matter of

---

4. Related to this question is whether the explosive component of the live grenades could even be removed and redistributed.

law), is whether the inert grenades were "destructive devices" regardless of the ability to arm all thirty with the powder from two. The government cites only two cases in its brief, both for the proposition that the *quantity* of powder is not dispositive. Neither case, however, supports the government's argument. *Ballew v. United States,* 389 F.Supp. 47 (D.Md.1975), *aff'd mem. op.,* 539 F.2d 705 (4th Cir.1976), involved a Federal Tort Claims suit by a person who was shot during the course of a search of his residence by federal agents armed with a search warrant. Part of his claim was premised on his contention that the agents sought a search warrant before adequately investigating whether the hand grenades in Ballew's home were actually "destructive devices" within the meaning of 26 U.S.C. § 5845(f). The district court specifically found, however, that three grenades seized "could have been fully activated merely by adding either the black powder or the smokeless powder likewise seized in [Ballew's] apartment...." *Id.* at 55. Similarly, in *United States v. Kiliyan,* 456 F.2d 555 (8th Cir.1972), evidence at trial was that each of the two grenades in question contained "approximately twenty-one grains of black powder," that this powder was analyzed as "gunpowder capable of causing an explosion," and "that the amount of such powder in each grenade was about the same as that used in combat grenades...." *Id.* at 557. Contrary to the government's argument, the amount of powder in the grenades in these cases was central to the finding of a "destructive device."

 At its core, the legal issue is whether a person can be deemed in possession of a "destructive device" if he does not possess one of the requisite parts or ingredients needed to activate the device. A defendant may be penalized under § 2K2.2(b) for only that number of destructive devices which may be "readily assembled" from the parts in his possession. A defendant must possess *every* essential part necessary to construct a destructive device. *See United States v. Malone,* 546 F.2d 1182 (5th Cir.1977) (reversing a conviction for possession of an unregistered grenade because defendant did not possess gunpow-

der to arm it); *see also United States v. Posnjak,* 457 F.2d 1110, 1116 (2nd Cir. 1972); ("All of the necessary components ... must be possessed in order to possess a 'destructive device'...."); *United States v. Davis,* 313 F.Supp. 710, 713 (D.Conn.1970) ("[W]hat Congress meant by the term [destructive device] was an association of the components of a destructive device, at the same time and place, capable of being converted into a destructive device...."). The concept "any combination of parts ... from which a destructive device may be readily assembled" does not take on a broader meaning when it is applied to the sentencing phase of a criminal proceeding. Blackburn wanted thirty live grenades and thought that was what he purchased. Nevertheless, he received only two destructive devices.

The sentence is vacated, and the case is remanded with instructions to recalculate the sentence without any additions to the base offense level under U.S.S.G. § 2K2.2(b).

VACATED AND REMANDED.