962 F.2d 7
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
AUTOMATED SCIENCES GROUP, INCORPORATED, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Conrad HIPKINS, Defendant-Appellant.
 Nos. 91-5063, 91-5064.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 7, 1992
Decided: May 18, 1992
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CR-90-453-S)
 Argued: Michael Schatzow, Venable, Baetjer & Howard, Baltimore, Maryland, for Appellants.
 Dale Preston Kelberman, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 On Brief: Catherine L. Schuster, Venable, Baetjer & Howard, Baltimore, Maryland; Jacob A. Stein, Stein, Mitchell & Mezines, Washington, D.C., for Appellant Hipkins; James J. Graham, Jones, Day, Reavis & Pogue, Washington, D.C., for Appellant Automated Sciences.
 Richard D. Bennett, United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before WIDENER, Circuit Judge, BUTZNER, Senior Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Conrad Hipkins and Automated Sciences Group, Inc. (ASG) were convicted under 18 U.S.C. Section 371 of conspiracy to commit bribery. They appeal and assign error to a number of the district court's trial and post trial rulings. Finding no error, we affirm their conviction.
 
 I.
 
 2
 Conrad Hipkins was the founder and principal stockholder of ASG. Clarence Braddock joined ASG in 1979 as its President, and became CEO in 1985. ASG was a minority business enterprise which provided computer services to private businesses and government agencies. ASG participated in the Small Business Administration 8-A set aside program, which provides minority-owned and operated companies with the opportunity to obtain government contracts on a noncompetitive basis. ASG utilized the services of Louis Rainey, an independent consultant, to assist in obtaining government contracts.
 
 
 3
 Richard Ramirez was a civilian officer of the United States Navy from July of 1980 through April of 1984. Ramirez also served as the Director of the Office of Small and Disadvantaged Business Utilization (SADBU), which was established to assist minority owned businesses in obtaining government contracts with the Navy.
 
 
 4
 On November 27, 1990, Hipkins, Braddock, Rainey, Ramirez and ASG were jointly indicted by the grand jury for the District of Maryland in a four-count indictment. Count one charged all of the above listed defendants with conspiracy to commit bribery, in violation of 18 U.S.C. Section 371. Counts two and three charged Hipkins and ASG with bribery of Ramirez, in violation of 18 U.S.C. Section 201(b). Count four charged Hipkins and ASG with using interstate facilities with the intent to commit bribery, in violation of 18 U.S.C. Section 1952(a)(3).
 
 
 5
 On appropriate motion by Hipkins and ASG, the district court dismissed counts two through four of the indictment for failure to state an offense. The decision was based on the fact that at the time of the alleged bribery, Ramirez was no longer a public official. The district court held that 18 U.S.C. Section 201(b) was only violated if payments to government officials were made while the recipient was a public employee. Thus, Section 201(b) could not by its terms apply to certain payments made by the defendants to Ramirez. The case proceeded to trial on March 18, 1991 on the remaining count in the indictment. After a trial by jury, both Hipkins and ASG were found guilty of the charges alleged in count one of the indictment.[1]
 
 
 6
 The defendants appeal their convictions on three grounds. First, they claim that the trial court erred in refusing to grant their motion for judgment of acquittal. The defendants contend that the government failed to prove that any of the overt acts alleged in the indictment occurred within five years of the return date of the indictment, as required by the applicable statute of limitations. Second, the defendants assert that the trial court abused its discretion by overruling their objection to the prosecutor's argument in rebuttal. Lastly, the defendants assert that the district court erred by instructing the jury about the purpose of the conspiracy statute.
 
 II.
 
 7
 Although it overlaps somewhat with the substantive merit of the defendants' first assignment of error, the court must first determine the appropriate standard of review to apply to the trial court's denial of the motion for judgment of acquittal. The United States contends that the standard of review is found by looking at Jackson v. Virginia, 443 U.S. 307 (1979), and United States v. Giunta, 925 F.2d 758 (4th Cir. 1991). These cases cite the well established standard for reviewing a district court's denial of a motion for acquittal, which inquires whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt," viewing the evidence in the light most favorable to the government. Giunta, 925 F.2d at 764, quoting Jackson, 433 U.S. at 319.
 
 
 8
 The defendants contend that this court must review the first assignment of error using a de novo standard. The argument for this position is that the trial court could not make a determination about the statute of limitations unless he first determined whether certain acts were within the scope of the conspiracy. Following this argument, the preliminary step of defining the scope of the conspiracy is not a pure question of fact, but rather a mixed question of law and fact which this court should review de novo. In support of this theory the defendants rely on United States v. Blackburn, 940 F.2d 107, 109 (4th Cir. 1991), and United States v. Vowiell, 869 F.2d 1264, 1267 (9th Cir. 1989).
 
 
 9
 Blackburn lends little support to the defendants' argument. In Blackburn, the court reviewed a trial court determination that certain inert grenades qualified as "destructive devices" for purposes of sentencing under the Guidelines. We held that this was a matter of statutory construction and as such was a matter of law subject to de novo review. Blackburn, 940 F.2d at 109. The present case does not involve statutory construction and thus the citation to Blackburn is misplaced.
 
 
 10
 In Vowiell, the defendant was convicted for conspiring to assist another in escaping from a federal penitentiary. At trial, the court admitted, over an objection by the defense, certain incriminatory statements allegedly made by the defendant. The court held that the statements were admissible under Fed.R.Evid. 801(d)(2)(E) as statements made by a coconspirator. Implicit in this decision was a determination by the trial court that the statement was made during the conspiracy. On appeal, the court of appeals for the Ninth Circuit reviewed this evidentiary determination de novo. The court stated that, " ... the district court engaged in more than pure fact finding; the court made a legal conclusion about when a conspiracy to escape ends. Thus, the district court's decision involved a mixed question of law and fact which this court reviews de novo." Vowiell, 869 F.2d at 1267.
 
 
 11
 The present case is not analogous to Vowiell. In Vowiell, the trial court reached a specific legal conclusion; i.e. the challenged statement was made during the course of the alleged conspiracy. The court below did not make such a finding. Rather, Judge Smalkin determined that the evidence, when considered in the light most favorable to the Government, permitted the case to go to a properly instructed jury. In essence the district court made a factual determination that the evidence, if believed by the jury, supported the government's contention that at least one overt act, in furtherance of the conspiracy, occurred within the limitations period. Accordingly, this court will not disturb that finding if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. Giunta, 925 F.2d at 764. The court now directs its attention to a review of the evidence as it was adduced at trial.
 
 
 12
 The conspiracy in this case began in June of 1982, when Ramirez was confronted with both marital and financial difficulties. He asked Braddock for money and received two separate $10,000 payments. The first of these payments was in the form of a check drawn on an ASG bank account and signed by Hipkins. The check was made payable to Poli Eval, a fictitious entity created by Ramirez which was nothing more than a bank account. This first check was dated June 10, 1982. A second payment was evidenced by a check, dated July 30, 1982, made payable to ALG, Inc. and signed by Braddock. ALG was also merely a name given to a bank account controlled by Ramirez. The government also produced evidence tracing the second payment to Ramirez back to an ASG check signed by Hipkins and made payable to Braddock.
 
 
 13
 After these initial transactions, the parties became somewhat more sophisticated in making the payments to Ramirez. Ramirez testified that he was to receive one-third of any fee earned by Louis Rainey, an outside consultant who was paid a 6% commission on any government contracts he helped ASG secure. Rainey would then turn over Ramirez's portion of the "commission" to Brandeis Corporation, another fictitious entity created by Ramirez and his father. Beginning in March of 1983 and continuing until January 1987, ASG made periodic payments to Rainey which totalled approximately $270,000. Rainey in turn made periodic payments to Brandeis Corporation totalling $103,000. Among these payments were checks written by ASG to Rainey on August 11, 1986 and January 9, 1987, and checks written by Rainey to Brandeis on August 18, 1986 and January 24, 1987. These checks correspond to the overt acts numbered 9 through 12 in the indictment.
 
 
 14
 Both sides agree that the acts numbered 9 through 12 (listed above) are the only overt acts alleged in the indictment which occurred within five years of November 27, 1990, the return date of the indictment. Both sides also agree that the five year limitations period prescribed in 18 U.S.C. Section 3282 applies to this case. The dispute lies in whether these acts were committed in furtherance of the conspiracy. If a rational jury could so find, then the defendants' assignment of error must fail.
 
 
 15
 The leading case in this area is Grunewald v. United States, 353 U.S. 391 (1957). Here, the Court stated that:
 
 
 16
 [T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy.
 
 
 17
 Id. at 397. Judge Smalkin properly instructed the jury in this regard. Specifically, he told the jury that:
 
 
 18
 ... the government, in order to convict the defendants, must prove beyond a reasonable doubt that the overt act, one of the four overt acts (numbers 9 through 12), was committed for the purpose of carrying out a purpose or objective of the unlawful agreement, that the conspiracy was still in effect, and that the defendant whom you are considering, Conrad Hipkins and ASG, was still a member (sic).
 
 
 19
 The only purposes[2] as to which the overt acts can be in furtherance [of] in this case are the purposes of an agreement among the conspirators, if there was one, to continue to pay bribe money to Mr. Ramirez after he left government service or an agreement among the conspirators to conceal payments until all had been made, if there was such an agreement. These are questions of fact for you to decide.
 
 
 20
 This instruction is supported by both case law and by the facts of the case. The United States is correct in its assertion that this case in not unlike numerous others in which one of the objects of the conspiracy involved sharing money. In these types of cases, the courts have found that a conspiracy continues until the "spoils are divided among the miscreants," and the payments made constitute overt acts made in furtherance of the conspiracy. See United States v. A-A-A Electrical Company, Inc., 788 F.2d 242, 244-45 (4th Cir. 1986); United States v. Modern Electric Co., 788 F.2d 232 (4th Cir. 1986); United States v. Fitzpatrick, 892 F.2d 162 (1st Cir. 1989); United States v. Potamitis, 739 F.2d 784 (2nd Cir.), cert. denied, 469 U.S. 918 (1984); United States v. Helmich, 704 F.2d 547, 548-50 (11th Cir.), cert. denied, 464 U.S. 939 (1983).
 
 
 21
 There was also sufficient evidence in this case for the jury to determine that at least one of the overt acts designated as numbers 9 through 12 in the indictment were committed in furtherance of the conspiracy. The payments of bribes, funnelled through Rainey, furthered two purposes of the conspiracy. Most obviously, the "fee" splitting system helped to conceal the payments of bribes to Ramirez. Further, the payments certainly were to the benefit of Ramirez. Because we find that there was sufficient evidence for the jury to conclude that at least one overt act alleged in the indictment was committed in furtherance of the conspiracy and within the five year statute of limitations, we overrule the defendants' first assignment of error.
 
 III.
 
 22
 The next issue on appeal is whether the trial court erred by allowing the prosecutor to make certain arguments in rebuttal, over timely objection by the defendants. The gist of the defendants' argument is that the prosecutor improperly argued facts not in evidence. Both sides agree that the district court's ruling in this regard is reviewed under an abuse of discretion standard.
 
 
 23
 The defendants made this argument to the court below via a motion for a new trial. A careful review of the record and of Judge Smalkin's well reasoned opinion convinces this court that the defendants' second assignment of error is groundless.
 
 IV.
 
 24
 The last issue for this court to resolve is the defendants contention that the trial court erred by giving the jury, over timely objection, an instruction regarding the purposes behind the conspiracy statute. Both sides agree that the trial court's decision should be upheld unless this court finds it to be an abuse of discretion.
 
 
 25
 The defendants focus on that portion of the charge that states:
 
 
 26
 Congress has deemed it appropriate to make conspiracy standing alone a separate crime even if the conspiracy is not successful because collective criminal activity poses a greater threat to the public safety and welfare than individual conduct and increases the likelihood of success of any particular criminal venture.
 
 
 27
 At the charging conference, counsel for Hipkins objected to this portion of the instruction because it "suggests that the jury has to be more actively involved in trying to prohibit violations of this crime than some other crime." Judge Smalkin disagreed, explaining that "I think it (the challenged instruction) is [a] neutral explanation of the law; and, as I say, the idea of conspiracy is baffling to lay people, and they should know the reason behind it; and, as I say, this is typically given in conspiracy cases...."
 
 
 28
 The appellants have focused on one sentence in a charge which exceeds forty pages. In reviewing this assignment of error, this court must consider the instructions as a whole and determine whether those instructions adequately informed the jury of the necessary elements of the offense and the standards to apply. Cupp v. Naughten, 414 U.S. 141, 146-147 (1973). Reviewing the instructions as a whole, this court is satisfied that the district court did not commit error. Although an instruction regarding the purposes behind a statute should be used sparingly, United States v. Denny, 939 F.2d 1449, 1453-54 (10th Cir. 1991), the instruction in this case was appropriate because it properly assisted the jury and was not unfairly prejudicial to the defendants. Id. at 1454.
 
 
 29
 For the reasons stated herein, we hold that the district court did not commit error in this case.
 
 AFFIRMED
 
 
 [1]
 Defendant Braddock pled guilty to count one of the indictment. By the time of trial, Ramirez had already pled guilty to two bribery counts and two tax counts in the Southern District of New York, and had served most of his sentence for these offenses. The United States Attorney's Office for the District of Maryland agreed not to prosecute Ramirez for his crimes involving ASG. The record does not indicate the disposition of the charges against Louis Rainey
 
 
 [2]
 The indictment returned against Hipkins and ASG alleged that the purposes of the conspiracy were, among other things: (a) to influence and corrupt the operation of SADBU; (b) to corruptly influence the awarding of Navy contracts to ASG; (c) to benefit and enrich Richard Ramirez and Jose Ramirez as well as Rainey by the payments of bribes to Richard Ramirez and Brandeis through Rainey; and (d) to conceal the payment of bribes, the corruption of SADBU, and the influencing of the awarding of contracts by the United States Navy to ASG. Judge Smalkin apparently decided that the overt acts listed in the indictment could not have been committed to achieve the purposes listed as (a) and (b) above, because by the time these acts occurred, Ramirez was no longer employed at SADBU and could not exert any influence over the awarding of Navy contracts