**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. KENNETH WILLIAM KIRKLAND, *Defendant-Appellant.* | No. 16-10514 D.C. No. 1:15-cr-00322-DAD-BAM-1 OPINION |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted July 10, 2018
Pasadena, California

Filed November 28, 2018

Before: D. Michael Fisher,[*] Paul J. Watford,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Watford

---

[*] The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the defendant's convictions and sentence for being a felon in possession of a destructive device in violation of 18 U.S.C. § 922(g)(1) and possessing an unregistered destructive device in violation of 26 U.S.C. § 5861(d).

The defendant contended that the definition of "destructive device" in 18 U.S.C. § 921(a)(4)(C) requires possession of every component necessary to construct a functional weapon, and that he would be entitled to a judgment of acquittal because the government did not introduce any evidence to establish that he possessed the eight C-cell batteries needed for the device in question to operate.

The panel held that § 921(a)(4)(C) requires only that the defendant possess a combination of parts from which a functional device "may be readily assembled"; that the requirement does not categorically exclude situations in which the assembly process entails the acquisition and addition of a new part; and that the "readily assembled" element can still be met so long as the defendant could acquire the missing part quickly and easily, and so long as the defendant could incorporate the missing part quickly and easily. The panel concluded that because the defendant could have quickly and easily obtained the missing batteries

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

assuming he did not have them lying around the house already, and because he could have quickly and easily incorporated them into his partially constructed bomb to render it functional, ample evidence supports the conclusion that a functional explosive device could be readily assembled from the combination of parts the defendant possessed.

## COUNSEL

Carlton F. Gunn (argued), Pasadena, California, for Defendant-Appellant.

Angela Scott (argued) and Christopher D. Baker, Assistant United States Attorneys; Camil A. Skipper, Appellate Chief; United States Attorney's Office, Fresno, California; for Plaintiff-Appellee.

## OPINION

WATFORD, Circuit Judge:

When executing a search warrant at Kenneth Kirkland's home, police officers discovered a partially constructed homemade bomb concealed inside a shoe box. The device contained: a battery box designed to hold eight C-cell batteries, which served as the device's power source; a radio frequency receiver to pick up the radio signal that would detonate the device; a detonator; wires to conduct electricity from the batteries to the detonator; and shotgun shells that served as the explosive main charge. All of the components necessary for the device to function were present except for the eight C-cell batteries. An explosives expert testified at

trial that to render the device functional, Kirkland simply had to insert the batteries into the battery box and connect the detonator to the power source. That process, the expert said, would take "a matter of minutes."

Based on Kirkland's possession of this homemade bomb, the jury convicted him of being a felon in possession of a destructive device in violation of 18 U.S.C. § 922(g)(1), and possessing an unregistered destructive device in violation of 26 U.S.C. § 5861(d). On appeal, Kirkland challenges the sufficiency of the evidence to support his convictions, on the ground that the device he possessed does not qualify as a "destructive device." He also argues that his sentence should not have been enhanced under the "destructive device" provision of the Sentencing Guidelines, U.S.S.G. § 2K2.1(b)(3)(B), as that enhancement turns on the same definition of "destructive device." (We resolve his remaining contentions in an unpublished memorandum disposition filed concurrently with this opinion.)

Both of the statutes under which Kirkland was convicted prohibit the unlawful possession of a "firearm," which is defined to include a "destructive device." 18 U.S.C. § 921(a)(3)(D); 26 U.S.C. § 5845(a)(8). Both statutes—one a provision of the Gun Control Act of 1968, the other a provision of the National Firearms Act—define the term "destructive device" in almost identical language. 18 U.S.C. § 921(a)(4); 26 U.S.C. § 5845(f). We will refer throughout to the definition found in the Gun Control Act, but our analysis applies equally to the definition provided in the National Firearms Act. *See United States v. Lussier*, 128 F.3d 1312, 1314 n.3 (9th Cir. 1997).

Section 921(a)(4) defines "destructive device" in relevant part as follows:

(4) The term "destructive device" means—

(A) any explosive, incendiary, or poison gas—

(i) bomb,

(ii) grenade,

(iii) rocket having a propellant charge of more than four ounces,

(iv) missile having an explosive or incendiary charge of more than one-quarter ounce,

(v) mine, or

(vi) device similar to any of the devices described in the preceding clauses;

(B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

> (C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.
>
> The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon . . . .

Subsections (A) and (B) cover fully assembled weapons; subsection (C) generally applies to a combination of parts that has not yet been assembled into a functional weapon. *Lussier*, 128 F.3d at 1315. At trial, the government proceeded against Kirkland solely under subsection (C), so we will confine our discussion to that provision.

Kirkland does not dispute that the parts he possessed were designed for use as one of the weapons described in subsection (A)—namely, an explosive bomb. He challenges only the sufficiency of the evidence to support the jury's finding that he possessed a combination of parts "from which" an explosive bomb could be "readily assembled." In his view, a conviction under subsection (C) requires proof that the defendant possessed every component necessary to construct a functional weapon. Under Kirkland's reading of the statute, he would be entitled to a judgment of acquittal because the device in question needed eight C-cell batteries to operate, and the government did not introduce any evidence establishing that he possessed such batteries.

We do not think the statute can be read in the manner urged by Kirkland. Nothing in the text of § 921(a)(4)(C) states that a defendant must possess every component necessary to render a partially constructed device capable of detonating. The statute requires only that the defendant possess a combination of parts from which a functional device "may be readily assembled." As used in this provision, the term "readily" means quickly and easily: The combination of parts possessed by the defendant must be capable of being assembled into a functional device within a short period of time and with little difficulty—measures that may depend on the expertise of the defendant constructing the device. That requirement does not categorically exclude situations in which the assembly process entails the acquisition and addition of a new part. Thus, if the defendant lacks a part necessary to render the device functional, the "readily assembled" element can still be met so long as the defendant could acquire the missing part quickly and easily, and so long as the defendant could incorporate the part into the device quickly and easily. *See United States v. Sheehan*, 838 F.3d 109, 125 (2d Cir. 2016) (upholding a conviction even though the device lacked a piece of tape needed to connect the wires to the battery); *United States v. Russell*, 468 F. Supp. 322, 329–30 (S.D. Tex. 1979) (same where the device lacked a 1.5-volt battery).

Ample evidence supports the conclusion that a functional explosive device could be readily assembled from the combination of parts Kirkland possessed. As noted above, Kirkland had assembled a nearly complete homemade bomb; only the eight C-cell batteries were missing. The testimony at trial confirmed that those batteries are common household items "readily available to an ordinary consumer." Thus, Kirkland could have quickly and easily obtained the missing batteries, assuming he did not

have them lying around the house already. The jury also heard expert testimony that it would have taken only a matter of minutes to install the batteries and connect the detonator to the power source. Thus, once he obtained the batteries, Kirkland could have quickly and easily incorporated them into his partially constructed bomb to render it functional. This evidence is more than sufficient to satisfy the "readily assembled" element.

Kirkland contends that our reading of the statute will lead to intractable line-drawing problems as courts are forced to decide which components a defendant must possess in order to be convicted, and which he need not. We do not think that prediction will prove accurate. Whether a particular combination of parts may be "readily assembled" into an operable device is an inherently factbound issue that juries will have to resolve on a case-by-case basis. With one exception, mentioned below, no bright-line rules can be drawn declaring which components of a destructive device must be in the defendant's possession in order for a conviction to be sustained. That will depend in every case on both the nature of the parts the defendant has already assembled and the ease with which the defendant could acquire and incorporate any missing parts. At the end of the day, regardless of which components are missing from the device, the ultimate question will be the same: Can the missing parts be obtained quickly and easily, and if so, can they quickly and easily be incorporated to render the device functional?

The one exception involves the material necessary to bring a device within the coverage of § 921(a)(4). Subsection (A) covers any "explosive, incendiary, or poison gas" bomb, grenade, etc. At least two circuits have held that a conviction may not be sustained under subsection (C),

which tracks the coverage of subsection (A), unless the defendant possesses the explosive material necessary to construct an operable explosive weapon. *See United States v. Blackburn*, 940 F.2d 107, 110 (4th Cir. 1991); *United States v. Malone*, 546 F.2d 1182, 1184 (5th Cir. 1977). The same would be true of the incendiary material or poison gas necessary to construct a weapon of that ilk. This exception does not apply here, as Kirkland does not dispute that he possessed the necessary explosive material in the form of a detonator and shotgun shells.[1]

We reject Kirkland's reading of the statute for the additional reason that it is at war with Congress' purpose in enacting the "combination of parts" provision. Congress sought to protect the public from the danger posed by military-style weaponry and "the street variety of homemade instruments and weapons of crime and violence." *United States v. Peterson*, 475 F.2d 806, 810 (9th Cir. 1973). That danger exists not only when a defendant possesses a fully assembled weapon, but also when a defendant who intends to construct such a weapon has gathered enough of the necessary components such that a functional weapon can be readily assembled. Reading the statute to require possession of *every* necessary component, even a single item that could be readily obtained, would defeat the flexibility Congress sought to build into the statutory scheme and "would foster easy evasion to thwart the Congressional intent." *United States v. Shafer*, 445 F.2d 579, 583 (7th Cir. 1971). While

---

[1] The court in *Malone* did state, as Kirkland points out, that "the defendant cannot be guilty of [possessing a destructive device] because he did not have in his possession all of the component parts from which a destructive device might be readily assembled." 546 F.2d at 1184. The court, however, explicitly limited its holding to the facts before it— namely, a "complete absence of explosive material." *Id.*

the ultimate harm that Congress sought to prevent occurs when the covered weapons are *used*, Congress chose to take the prophylactic measure of criminalizing the *possession* of such weapons—as well as the possession of parts that could readily become such weapons. Under Kirkland's reading, an individual could render that prophylactic measure futile, avoiding criminal exposure for possession simply by refraining from adding some easily obtainable part to an otherwise fully assembled weapon until use of the weapon is imminent.

This case provides a good illustration of the concerns that motivated Congress to enact the "combination of parts" provision. The evidence at trial showed that Kirkland's explosive device lacked batteries because he was not yet ready to use it. In a post-arrest interview, Kirkland told the police that he had not added the batteries because he knew the device could explode inadvertently once he did. Because C-cell batteries could be readily obtained at any time, there was no need for Kirkland to add them in advance. If and when he was ready to deploy his weapon, he could acquire the batteries and insert them into the device right before doing so. The absence of the batteries does not make Kirkland less culpable from the standpoint of the statute's prime objective—keeping inherently dangerous weapons out of the hands of those who are not permitted to possess them.

**AFFIRMED.**