**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert O. DENNY,**
**Defendant–Appellant.**

**No. 90–5107.**

United States Court of Appeals,
Tenth Circuit.

July 29, 1991.

Kathryn Phillips, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., Kenneth P. Snoke, Asst. U.S. Atty. on the brief), Tulsa, Okl., for plaintiff-appellee.

G. Steven Stidham of Sneed, Lang, Adams, Hamilton & Barnett, Tulsa, Okl., for defendant-appellant.

Before BALDOCK and BRORBY, Circuit Judges, and FINESILVER,[*] District Judge.

BRORBY, Circuit Judge.

Mr. Denny appeals his conviction of four-teen counts of violating the bank bribery statute, 18 U.S.C. § 215. He asserts: (1) insufficiency of evidence; (2) improper admission of expert testimony; and (3) improper instruction.

Mr. Denny was an employee of an FDIC insured bank where he was in charge of trading various securities. Mr. Denny bought and sold securities not only for the bank but for two of the bank's customers utilizing the bank's funds, credit, and name. After the bank had bought or sold, Mr. Denny would enter upon the bank's books what trades were attributable to each of the two customers. The bank was aware it was buying from and selling secu-

rities to the two customers. However, the bank was unaware Mr. Denny was receiving one-half of the profits (no losses were ever realized) from both of the customers. The purchases and sales were frequently accomplished without orders from the customers. Mr. Denny utilized his own judgment as to when and what to sell or buy from the bank on the customers' behalf.

I

Mr. Denny asserts his conduct was not prohibited by the statute. While not articulated as such, Mr. Denny's claim is actually one of insufficiency of the evidence on the issue of whether his conduct amounted to the type of conduct proscribed by the statute.

The statute at issue, 18 U.S.C. § 215(a)(2) reads, in pertinent part, as follows:

> Whoever ... as an ... employee ... of a financial institution, corruptly solicits ... or corruptly accepts or agrees to accept, anything of value ... intending to be influenced or rewarded in connection with any business or transaction of such institution....

Section (c) of 18 U.S.C. § 215 provides that the above quoted section of the statute shall not apply to "compensation paid ... in the usual course of business." To sustain a conviction under this statute, it therefore was incumbent upon the Government to prove beyond a reasonable doubt:

(1) the defendant was an employee of a financial institution;

(2) the deposits of the financial institution were insured by the FDIC;

(3) the defendant-employee corruptly accepted or agreed to accept something of value; and

(4) the defendant-employee did so intending to be rewarded in connection with a business or transaction of the financial institution.

---

[*] The Honorable Sherman G. Finesilver, Chief Judge, United States District Court for the District of Colorado, sitting by designation.

■ There exists no dispute that Mr. Denny was an employee of an FDIC insured financial institution, and that he accepted something of value. Mr. Denny contends, however, that the Government's evidence failed to show the payments were accepted corruptly with the intent to be rewarded. Mr. Denny argues his share of the profits were not received for bestowing on the two customers any benefits they would not otherwise receive. In short, Mr. Denny argues he, as a banker, did not give favorable treatment in return for a bribe.

Definition of the word "corruptly" is not contained in the statute itself. The legislative history, however, incorporates the standard federal jury instruction, which defines the word "corruptly" as follows:

> An act is done "corruptly" under this bank bribery statute if it is performed voluntarily and deliberately and performed with the purpose of accomplishing either an unlawful end or result or accomplishing some otherwise lawful end or lawful result by any unlawful method or means.

2 E. Devitt, C. Blackmar & K. O'Malley, *Federal Jury Practice and Instructions* § 26.08 (4th ed. 1990).

■ "In evaluating a claim for insufficient evidence a court must view all the evidence, direct and circumstantial, as well as all reasonable inferences drawn therefrom, in the light most favorable to the government." *United States v. Levario,* 877 F.2d 1483, 1485 (10th Cir.1989) (footnote and citations omitted). We then determine whether, in light of the evidence presented, a rational trier of fact could have found the elements of the offense established beyond a reasonable doubt. *Id.; see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Again, it was undisputed that Mr. Denny was an employee of an FDIC insured financial institution, and that he accepted something of value. At issue is whether the Government established beyond a reasonable doubt that Mr. Denny voluntarily and deliberately, with the pur-

pose of accomplishing either an unlawful result or a lawful result by an unlawful method, accepted something of value intending to be rewarded or influenced in connection with some business or transaction of the bank.

Reviewing the evidence in a light most favorable to the Government, we find the following facts established thereby. Mr. Denny bought and sold securities from the bank where he was employed for the accounts of two customers, Mr. Morris and Mr. Applegate. Morris invested about $14,000 in his account. The other customer, Applegate, invested approximately $20,000 in his account. Mr. Denny was buying and selling securities for these two customers in denominations of $100,000 and $1,000,000. The price volatility of these instruments, Ginnie Maes and U.S. Treasury securities, could and did create huge gains and losses almost instantly. As all trading was done in the bank's name and with the bank's credit and money, it was the bank that risked liability exposure on these since the investments were relatively nominal in relation to the securities purchased. In return for their investments, Mr. Applegate made $27,000 in 1987 and $52,000 in 1988, and Mr. Morris made at least $20,000 in 1987 and more in 1988. Mr. Morris and Mr. Applegate each paid to Mr. Denny one-half of all their profits through a series of periodic checks (some of which were marked for fictitious purposes), and cash payments.[1] At one point during the trading, the two customers had a combined unrealized loss position in excess of $200,000, which they could not have paid without suffering substantial financial hardship—quite possibly bankruptcy.

The evidence also established Mr. Denny was well aware he was prohibited, under written bank policies, from receiving profits from investment dealing. The evidence detailed the bank's exposure to liability as a result of Mr. Denny's conduct, which included market swings prior to settlement; rolling the loss over or extending the loss prior to settlement; the granting of an

---

1. These payments later served as the basis of the fourteen counts for which Mr. Denny was convicted, each payment being treated as a separate violation.

interest-free loan during this period; and discretionary trading without specified customer instruction, which would allow the customer to avoid the loss by claiming the trade was not authorized. Further, the evidence establishes that Mr. Denny kept secret his receipt of one-half of the profits from these customers, indicating his awareness that he was prohibited from engaging in such conduct.

Mr. Denny argues, in effect, that he was a partner with each of his two customers and the money he received was merely a split of the partnership profits and, therefore, the money paid to him was merely compensation paid in the usual course of business. We reject this argument. Mr. Denny secretly accepted money for wrongfully engaging in discretionary trading utilizing the funds and credit of his employer, the bank. The money received by Mr. Denny was not compensation paid in the usual course of business. Without the wrongful use of bank funds and credit there would have been no profits. The jury considered Mr. Denny's argument that he received no reward, just a share of the profits, and rejected this characterization of the facts. An equally plausible and more probable inference is that Mr. Denny received one-half of the profits as his reward for generating profits by the wrongful use of bank funds and credits.

Mr. Denny suggested to Mr. Morris and Mr. Applegate that if each opened an account with the bank, he would trade securities on their behalf. Mr. Denny did not trade with broker/dealers on behalf of his customers; rather, he traded with the bank. These trades were unlawful as applicable rules prohibited such discretionary trading. Mr. Denny did not contribute his own capital to those "partnerships," nor did he supply any other form of value except his services as a bank employee and ability to trade securities utilizing the bank's name, funds and credit. Mr. Morris and Mr. Applegate secretly rewarded Mr. Denny by giving him one-half of their profits. Mr. Denny gave to Mr. Morris and Mr. Applegate his ability and power to trade bank assets for their benefit. The evidence is sufficient to sustain the conviction.

The statute does not require establishing that the bank suffered a loss. In the case before us, the bank was paid a commission and theoretically made a profit on each trade. This is legally insignificant. The gravamen of the offense set forth in 18 U.S.C. § 215 is that a bank employee deliberately commit an unlawful act, or a lawful act by unlawful means, in connection with bank business intending to be rewarded for accomplishing this act. The evidence and the inferences drawn therefrom clearly show Mr. Denny violated the statute.

## II

■ Mr. Denny next contends the trial court wrongfully allowed an expert witness to testify he was "guilty." When reviewing a district court's evidentiary rulings, we will not reverse absent an abuse of discretion. *United States v. Bonnett*, 877 F.2d 1450, 1458 (10th Cir.1989). Abuse of discretion lies where we develop a definite and firm conviction that the trial court made a clear error of judgment or exceeded the bounds of permissible choice under the circumstances. *Id.*

■ During the Government's case in chief, Ms. Atkins was called as an expert witness. It was established that Ms. Atkins is a national bank examiner with expertise in the area of investments and trading. She testified as to the existence of regulations that prohibit discretionary trading where a bank, as the broker/dealer, makes the decision to buy or sell a security without the prior acknowledgment of the individual whose money is being invested. She further testified regarding the potential risk of loss to the bank when such written authorization is not given by the customer. Ms. Atkins also gave her opinion that the type of discretionary trading engaged in by Mr. Denny was an unsafe and unsound practice.

Mr. Denny points specifically to the following exchange that occurred during cross-examination:

Q. [By Defense Counsel] The testimony in this case from Mr. Morris, Mr. Applegate, and even Agent Brechwald, as of

December 1989, was that Mr. Denny had told all of them he was equally at risk with regard to the money that was being traded, the bonds that were being trade[d], that the profits and losses would be shared. Now, if in fact Mr. Denny was a fifty-fifty partner with regard to the trades, that wouldn't be discretionary trading, would it?

A. First of all, Mr. Denny by law would have to—

Q. Can you answer the question that I've asked you?

[PROSECUTOR]: Your Honor, I object. I think she's got to qualify—

THE COURT: Overruled. Let her answer.

A. Okay. First of all, by law Mr. Denny shouldn't be—or the officer in the bank—I think it's Mr. Denny, is that right? Mr. Denny should be telling the bank that he's in that type of situation with one of his customers. He's supposed to disclose that type of relationship. By law he's not supposed to be involved in that type of relationship, or by—and I don't know that there was a formal document, written document or contract that stated that the two individuals were actually in a partnership agreement.

[DEFENSE COUNSEL]: No further questions, thank you, ma'am.

First we note the absence of any contemporary objection by defense counsel. After the witness had been excused, and after the prosecution rested, defense counsel moved to strike the answer as "not responsive to the question as well as being patently wrong and improper evidence for the jury to consider." The trial court allowed the answer to stand.

The witness's testimony was far removed from being an opinion as to Mr. Denny's guilt of the offense charged. The answer given by Ms. Atkins was an attempt to offer a complete response to the question posed by defense counsel. Moreover, the response was collateral to the main issue in this case. Ms. Atkins was merely explaining that if the type of relationship explained in the hypothetical was actually what Mr. Denny was involved in, then he had an obligation to disclose such relationship to his employer, the bank. We therefore conclude the trial court did not abuse its discretion in allowing the answer of Ms. Atkins to stand.

### III

■ Mr. Denny argues the trial court erred in instructing on the purpose of the statute.

The trial court instructed the jury as to the elements of the offense and the burden of proof, and then instructed as follows:

One purpose of the statute that I read to you here is to protect the national bank, and the Federal Government that insures the national bank against actions by officers, directors, employees, agents or national banks, taken or made in the best interests of the officer, director, employee or agent but not in the best interests of the insured national bank. In other words, to prevent a conflict of interest from being created on the part of the officer, director, employee or agent of the national bank. However, a conflict of interest or violation of bank policy standing alone is not a crime under Title 18, United States Code, Section 215.

Accordingly, it is no defense to this statute that the insured national bank did not in fact lose any money as a result of transactions for which the defendant allegedly received the rewards.

During the instruction conference, the district court stated it would include in its instructions to the jury both the "Theory of Defense instruction" proposed by defense counsel, and the Government's Purpose of the Statute instruction. Defense counsel objected to the Government's instruction, stating: "We don't say we don't allow robbery because it's a bad thing to happen, just as we should not say in this case that we don't allow rewards or kickbacks or whatever because it could result in a conflict of interest." The prosecution responded: "[B]ecause I think the defendant is going to argue, ... among other things, that the bank didn't lose any money, and ... that there was no conflict of interest, I

think we're entitled to have the jury told that it doesn't make any difference." Later, defense counsel stated: "[T]o ... tell the jury the purpose of the statute gives grossly unfair weight to the victim in the case...."

The trial court ruled as follows:

THE COURT: I think that in a statute such as we're dealing with here that stating at least one of the purposes of it, as it relates to our factual scenario in this case, would be of some assistance to the jury. I think one of the purposes of the Court is to try to, in its instructions to the jury, attempt to clarify what the law on the subject is, and perhaps why the law, and so I'm going to give this Purpose of Statute instruction requested by the government, and I'm also going to give your [defense counsel's] Theory of Defense of the matter, and I think that kind of draws the battle lines. I don't think it's reversible error to do so. I think it will be of some assistance to the jury, because as the statute reads, I think some explanation of what kind of conduct that the statute was attempting to prohibit would be of assistance to the jury.

 When reviewing a claim of error relating to jury instructions, the instructions must be read and evaluated in their entirety. *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973). We must then determine whether the instructions, examined in the light of the record as a whole, fairly, adequately, and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them. *Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d 1259, 1271 (10th Cir. 1988). We will reverse for an error in jury instructions only when such error is prejudicial in light of the entire record. *Id.* at 1271, n. 19.

During the course of the trial, Mr. Denny emphasized the bank lost no money and that he merely engaged in separate business transactions that were not encompassed within the ambit of 18 U.S.C. § 215.

Nevertheless, Mr. Denny claims the instruction given was inaccurate in stating that one purpose of the statute is to prevent conflicts of interest. Mr. Denny also argues the instruction was "horribly prejudicial [in that it] allow[ed] the jury to consider the specter of financial institution failures in general."

First, we find Mr. Denny misperceives the purpose of 18 U.S.C. § 215. As stated in *United States v. Jumper,* 838 F.2d 755, 758 (5th Cir.1988):

The purpose of 18 U.S.C. § 215 is to protect FDIC insured bank deposits by preventing unsound and improvident lines of credit from being made ... by officers ... of the bank.... In addition, there can be no doubt that Congress' intent ... was to remove from the path of bank officials the temptation of self enrichment at the expense of the borrower *or bank.*

(Citations omitted). We also note that the legislative history of 18 U.S.C. § 215, as contained in House Report (Judiciary Committee) No. 99–335, provides the statute will enable the Department of Justice "to prosecute conduct that involves an effort 'to undermine an employee's fiduciary duty to his or her [bank] employer.'" H.R.Rep. No. 335, 99th Cong., 2nd Sess. 5, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1782, 1786. Therefore, we conclude the "purpose of statute instruction" given by the trial court was correct and in accordance with the law.

 Second, Mr. Denny's argument that the instruction was unduly prejudicial is actually based upon his defense theory that his conduct is not prohibited by the statute, a theory rejected both by the trial court and this court. We believe, based on a review of this record as a whole, the purpose instruction fairly, adequately, and correctly informed the jury of the applicable law in relation to the facts involved. Such a "purpose of the statute" instruction, however, should be used sparingly and only in those cases where it properly assists the jury, and will not be unfairly prejudicial. In the case before us, we believe the instruction provided helpful assistance and

has not been shown to have been unduly prejudicial. Thus, we do not find the reversal warranted on this basis.

IV

Accordingly, the judgment of the district court is AFFIRMED in all respects.