UNITED STATES of America,

v.

William TIANELLO, Defendant.

No. 93–106–CR–FTM–15.

United States District Court,
M.D. Florida.

April 7, 1994.

Douglas Molloy, Managing Asst. U.S. Atty., Ft. Myers, FL, for U.S.

Martin DerOvanesian, Asst. Federal Public Defender, Ft. Myers, FL, for defendant.

*ORDER*

GAGLIARDI, Senior District Judge.

Defendant, William Tianello, was found guilty after a two-day jury trial of corruptly demanding a $5,000 payment in connection with the business of a financial institution in violation of 18 U.S.C. § 215(a)(2) ("§ 215"). At the close of the evidence in the case, Defendant moved the Court for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court reserved ruling on the motion in order to consider whether Defendant was an "agent" of a "financial institution" as required by § 215.

## I. FACTUAL BACKGROUND

### A. The Transaction

The evidence presented in the case, taken in the light most favorable to the Government, established the following. Defendant was a "residential mortgage loan solicitor" with Southeast Mortgage Company ("SEMCO") in Fort Myers, Florida. As a mortgage solicitor, Defendant sought out borrowers through contacts with real estate agents and developers. Southeast Bank ("the bank"), which was a "financial institution," *see* 18 U.S.C. § 20, owned SEMCO, which was not. In the course of his work at SEMCO, Defendant solicited the business of Maximilian Duarte ("Duarte") who was seeking to secure a mortgage on a lot in Naples, Florida owned by his wife, Valerie Duarte, for a loan to be used to build a home on the lot. The loan was approved by SEMCO for $657,000 and closed in late April 1990. It is not clear from the evidence when the proceeds of the loan were disbursed to the Duartes.

One week after the loan closed, Defendant contacted Duarte and asked him to meet the next morning at a gas station on Marco Island. In the course of their business, the two had never met anywhere other than the offices of SEMCO. Duarte met Defendant the next morning as requested. Defendant then handed Duarte a loan folder containing copies of the documentation of the Duarte loan. Certain portions of the documents, consisting of Duarte's monthly income, debt

ratio figures for the Duartes, various statements on the forms relating to the fact that making false statements on them was a federal offense, statements that information provided on the form could be verified before or after closing, and that the loan would be in default and immediately payable if any information was found to be inaccurate were highlighted.

Defendant told Duarte that he had been a big help with the loan and that he had the authority to reclassify the loan as "borderline" and have it cancelled. Defendant indicated that he would cancel the loan unless Duarte paid him $5,000 by the next day.

Duarte discussed the matter with his wife that evening and decided to pay Defendant the money. The next day Duarte went to a bank and cashed a check for $5,100 made out to him by his wife. Duarte called Defendant to tell him that he would be able to meet him at 3 P.M. Defendant told him to meet at SEMCO. When Duarte asked Defendant what "guarantee" he had that the loan would not be cancelled regardless of whether he made the payment, Defendant told Duarte that he would have to trust him. Duarte then went to the mortgage company and delivered the money to Defendant at his desk.

**B.  The Relationship Between Defendant, SEMCO and the Bank**

The evidence presented regarding the nature of the relationships between Defendant and SEMCO, Defendant and the bank, and SEMCO and the bank was scant. Phillip Ruotolo ("Ruotolo"), manager of the Fort Myer's branch of SEMCO at the time Defendant was employed there, and Defendant testified about the relationships. In addition, Defendant introduced the incentive compensation plan which controlled Defendant's employment.

As to the relationship of the bank and SEMCO, the only relevant evidence was supplied by Ruotolo, who testified that the bank owned SEMCO and funded all of its loans, and that SEMCO was not a "separate organization" from the bank.

As to Defendant's relationship with SEM-CO, Ruotolo testified that Defendant was an employee of SEMCO, not the bank, and that Defendant's employment contract was with SEMCO. The "employment contract" Ruotolo referred to is SEMCO's "1989 Incentive Compensation Plan," (Def.'s exh. 1) ("the plan"). Defendant also testified that this was his employment contract. Defendant, Ruotolo and other SEMCO officers executed it. The contract describes loan solicitors as employees of SEMCO, and it indicates that salary levels will be determined and adjusted by SEMCO. Ruotolo and Defendant testified that his compensation was paid out of SEMCO accounts and he introduced a paycheck stub which indicated this.

**II.  THE MOTION FOR JUDGMENT OF ACQUITTAL**

**A.  Standard of Review**

■ In considering a motion for judgment of acquittal, a court must determine whether, viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor, a reasonable jury could have concluded that the Government had proven all the elements of the crime beyond a reasonable doubt. *United States v. Barfield*, 999 F.2d 1520, 1522 (11th Cir.1993). The elements of the crime Defendant was charged with are 1) that Defendant acted corruptly in 2) demanding or soliciting or agreeing to accept or accepting 3) something of value 4) in connection with the business of a financial institution 5) of which Defendant was an officer, director, employee, agent or attorney. The Government introduced ample evidence to support the existence of elements 1 through 4 beyond a reasonable doubt. The question remains whether the evidence introduced supports a finding that Defendant was an officer, director, employee, agent or attorney of a financial institution, and the Government's only claim here was that Defendant was an agent of the bank.

**B.  The Applicable Law**

■ SEMCO is not a financial institution as defined by the statute. *See* 18 U.S.C. § 20. Therefore, the Government had the

burden of proving that Defendant was an agent the bank. The term "agent" is not defined in the statute. Where a term in a statute is not defined, it is to be attributed its plain meaning. *F.D.I.C. v. Meyer*, — U.S. —, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Further, it is "well established that where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 739, 109 S.Ct. 2166, 2172, 104 L.Ed.2d 811 (1989) (defining "employee" as used in § 101 of the Copyright Act of 1976, 17 U.S.C. § 101, as it is understood in the conventional agency law concept of the master-servant relationship). The established meaning of the term "agent" is that which derives from the common law of agency. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1162 (11th Cir.1993) (defining term "agent" as used in Title VII according to the common law of agency); *see also United States v. Saks,* 964 F.2d 1514, 1523 (5th Cir.1992) (defining term "agent" as used in Federal Rule of Evidence 801(d)(2)(D) according to the common law of agency).

■ An agent is one who manifests consent to act for and under the control of a principal who manifests consent to the agent acting in such a manner. *Restatement (Second) of Agency* § 1; *Goldschmidt v. Holman,* 571 So.2d 422 (Fla.1990). The relationship does not depend on the parties' intent, but on their agreement, not necessarily contractualized, to act in the manner that results in the relationship called "agency." *Id.* comment on subsection (1). "It is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries and the agency agreement from other agreements." *Id.* If a party controls only the outcome of the endeavor, and not the means used to achieve the outcome, then an agency relationship does not exist. *Dorse v. Armstrong World Indus.,* 513 So.2d 1265, 1268 (Fla.1987). A party need not control the physical conduct of another for an agency relationship to exist, but only the manner in which the undertaking that is the subject of the relationship is to be performed. *See Restatement* §§ 14 & 14N. Whether or not control is exercised by the principal is irrelevant; what is relevant is whether the principal has the right to control the agent's performance. *Id.* § 14; *Nazworth v. Swire Florida, Inc.,* 486 So.2d 637, 638 (Fla.Dist.Ct.App.1986).

■ One who is appointed by an agent, empowered to make such an appointment, to perform the functions of the agent under the primary control of the agent is a "subagent." *Id.* § 5. Where an agent is a corporation, its employees are subagents of the principal. *Id.* A subagent is the agent of both the appointing agent and the principal. *See Id.* comment on subsection (1) & reporter's notes.

## C. Discussion

■ Defendant was an employee of SEMCO. Under common law principles of agency, therefore, Defendant was an "agent" of a "financial institution" if 1) Defendant was the bank's agent or 2) SEMCO was the bank's agent. A reasonable jury could not have inferred that either Defendant or SEMCO was an agent of the bank because the Government did not present any evidence from which one could infer that the bank had agreed that Defendant would act on its behalf.

The only evidence lending support to the argument that Defendant was the bank's agent was contained in Defendant's incentive contract with SEMCO. There are two references to the bank in the plan. The first is on the cover page in the "plan summary." It defines residential mortgage solicitors as being "responsible for originating mortgage loans outside the SEB Banking Center Network." Though no testimony was produced indicating that "SEB" referred to the bank, it is reasonable to infer that it did. The second reference is contained in the plan's final section entitled "Other Provisions:"

1. The Mortgage Solicitor agrees that he or she will at all times comply with the rules, regulations, and Code of Ethics of Southeast Mortgage Company and Southeast Banking Corporation and their investors, HUD, VA, GNMA,

FHLMC, local and state and federal governments. Any violation of the above is grounds for immediate dismissal.

These references do not support the inference that Defendant assented to act on the bank's behalf or under their control. While it is clear from the plan that Defendant manifested his assent to act for and under SEMCO's control, there is nothing to indicate that Defendant assented to act for the bank or under its control. The first reference in the plan merely describes the Defendant's position vis-a-vis the bank's in-house mortgage lending efforts. The second reference is more troublesome.

Defendant agreed to comply with the bank's rules, regulations and code of ethics. Agreeing to act according to an entity's rules, however, is not the same as agreeing to act under that entity's control. Defendant's promise to comply with the rules of the bank was not assent to act under their control or on their behalf. He merely assented to act within a certain set of rules as a condition of his employment with SEMCO. Defendant also agreed to act within the rules of a number of other entities including the local, state and federal government. Defendant did not thereby assent to act as an agent of those entities. By agreeing to act under those entities' rules, it would not be reasonable to infer that Defendant agreed to act for them and under their control.

A reasonable jury could not have concluded that Defendant was a subagent of the bank because the evidence does not support an inference that SEMCO was the bank's agent. "A corporation does not become an agent of another corporation merely because a majority of its voting shares is held by the other." *Restatement (Second) of Agency* § 14M; *see also Phoenix Can. Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988) (reversing lower court's finding of no agency relationship because it focused on whether the parent completely dominated the subsidiary rather than on "customary agency principles," i.e., whether the subsidiary acted as an agent for the particular transactions at issue). Rather, the relationship between a corporation and its subsidiary is analyzed with the same agency principles that apply to natural persons or otherwise unrelated corporations. *See Phoenix Canada*, 842 F.2d at 1477.

The evidence presented of the relationship between the bank and SEMCO may suggest that SEMCO was the bank's agent in soliciting mortgage loans, but it is not sufficient to support that conclusion beyond a reasonable doubt. Taken in the light most favorable to the Government, the evidence was merely that SEMCO was a wholly owned subsidiary of the bank and that its loans were funded by the bank. The Government presented no evidence that either party had agreed that SEMCO would act for or subject to the control of the bank. Nor did the Government present evidence that the bank in fact exercised control over SEMCO's loan soliciting. Had such evidence been before the jury, it might reasonably have inferred that SEMCO had agreed to act under the bank's control.

Although Ruotolo testified that the bank and SEMCO were not "separate organizations," this conclusive statement is contradicted by evidence suggesting that SEMCO and the bank were separate corporations, including Ruotolo's own testimony that employees of SEMCO were paid from SEMCO accounts, that its employees were told that they were not employees of the bank and should not represent that they were, and that the employees' contracts were with SEMCO. Ruotolo's conclusion, without more, that the two were not separate organizations, cannot support beyond a reasonable doubt the inference that SEMCO was the bank's agent. While the facts that the bank owned SEMCO and provided funding for its loans certainly tend to prove that SEMCO was the bank's agent, it is not enough to conclude beyond a reasonable doubt that this was the case. *See Marriott Bros. v. Gage*, 717 F.Supp. 458, 460 (N.D.Tex.1989) (holding that evidence that a defendant had been supportive of a bank, brought in customers and had assisted a customer in securing a loan was "merely colorable" evidence of an agency relationship under Texas law and that, therefore, defendant was entitled to summary judgment on a

RICO claim based on an allegation of a § 215 violation).

### III. Conclusion

The Government failed to produce evidence from which a reasonable jury could conclude beyond a reasonable doubt that Defendant was an agent of a financial institution. Defendant's motion for judgment of acquittal is therefore granted. Let the clerk enter judgment accordingly.

So Ordered.