UNITED STATES of America, Plaintiff,

v.

William J. STOECKER, Richard J. Bock, Lawrence E. Pluhar, Gregory P. Pace, and Richard A. Asta, Defendants.

No. 95 CR 118.

United States District Court,
N.D. Illinois,
Eastern Division.

March 15, 1996.

Order Clarifying Decision April 3, 1996.

William Thomas Huyck, Chicago, IL, George Pappas, Neville, Pappas & Mahoney, Chicago, IL, Scott Jay Frankel, Frankel & Cohen, Chicago, IL, Thomas Anthony Durkin, Patrick W. Blegen, Thomas Anthony Durkin, P.C., Chicago, IL, Jonathan Peter Remijas, Donald T. Bertucci, Chicago, IL, for William J. Stoecker.

Lynn C. Hartfield, Federal Defender Program, Chicago, IL, for Richard J. Bock.

George Pappas, Neville, Pappas & Mahoney, Chicago, IL, Jonathan Peter Remijas, Donald T. Bertucci, Chicago, IL, for Lawrence E. Pluhar.

Elliot M. Samuels, Law Office of Elliot Samuels, Chicago, IL, for Gregory P. Pace.

James R. Streicker, Matthew F. Kennelly, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, IL, for Richard A. Asta.

John Donovan Lien, Foley & Lardner, Chicago, IL, for Foley & Lardner.

Gillum Ferguson, United States Attorney's Office, Chicago, IL, for U.S.

## RULINGS ON DEFENDANT PACE'S PRETRIAL MOTIONS [1]

GETTLEMAN, District Judge.

### INTRODUCTION

Defendant Gregory P. Pace is charged with four counts of bank fraud under 18 U.S.C. § 1344, seven counts of making a false statement under 18 U.S.C. § 1014, and one count of accepting a bribe in connection with bank business under 18 U.S.C. § 215. The indictment charges that Pace made these statements to the alleged victim banks from October 22, 1986, to October 1, 1987, in furtherance of a scheme to defraud various FDIC insured financial institutions. The statements were allegedly made by Pace while he was an officer of Banker's Trust, and allegedly misrepresented the nature of Banker's Trust's security interest in loans made to entities controlled by co-defendant William Stoecker. The indictment further charges Pace with corruptly accepting money from Stoecker for making such statements.

### I. Motion to Dismiss on the Basis of Undue Pre–Indictment Delay

Pace argues that the court should dismiss the indictment because seven years have passed from the time in which he is alleged to have made the fraudulent statements and the time that the government brought the indictment. Pace argues that this inordinate delay violates his Fifth Amendment right to due process of law.

Initially, the court notes that defendant has not claimed that the government's prosecution is barred by the statute of limitations, which is the primary safeguard against potential prejudice resulting from the government's alleged delay in seeking an indict-

---

1. Two days before this opinion was issued, the grand jury returned a superseding indictment against all the defendants. The latter indictment does not materially alter the issues addressed in this opinion.

ment. See, e.g., *United States v. Ashford,* 924 F.2d 1416, 1419 (7th Cir.1991). The Supreme Court has stated, however, that "the statute of limitations does not fully define [a defendant's] rights with respect to events occurring prior to indictment." *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). In *Marion,* the court observed that the due process clause of the Fifth Amendment may preclude certain prosecutions even though brought within the limitations period, "if it were shown at trial that the pre-indictment delay in bringing the case caused substantial prejudice to [a defendant's] right to a fair trial, and that the delay was an intentional device to gain tactical advantage over the accused." *Marion,* 404 U.S. at 324, 92 S.Ct. at 465.

■ The burden is on the defendant to establish prejudice with specific, concrete allegations supported by evidence; only after meeting this burden must the government explain the reasons for the pre-indictment delay. *United States v. Sowa,* 34 F.3d 447, 449–50 (7th Cir.1994). The defendant's obligation to show actual and substantial prejudice is an exacting one. "It is not enough ... to offer some suggestion of speculative harm; rather, the defendant must present concrete evidence showing material harm." *United States v. Anagnostou,* 974 F.2d 939, 942 (7th Cir.1992), *cert. denied,* 507 U.S. 1050, 113 S.Ct. 1943, 123 L.Ed.2d 649 (1993). As the Supreme Court has stated, the prejudice must be concrete and substantial, and defendant is not deprived of due process if he is only "somewhat prejudiced by the lapse of time." *United States v. Lovasco,* 431 U.S. 783, 796, 97 S.Ct. 2044, 2052, 52 L.Ed.2d 752 (1977).

If the defendant clears the first hurdle of establishing concrete and substantial prejudice, the government is required to come forward and provide its reasons for the delay. Those reasons are then balanced against the defendant's prejudice to determine whether the defendant has been denied due process. *Sowa,* 34 F.3d at 451.

■ In the instant case, Pace's claims of actual prejudice are limited. He asserts that the indictment is based on statements made in alleged conversations that took place over nine years ago, and that his memory and the memory of the witnesses have faded.[2] Such vague allegations of "faded memory" are insufficient in this circuit to establish prejudice for the purposes of a due process violation. *Pharm v. Hatcher,* 984 F.2d 783, 787 (7th Cir.1993). He further argues that he is prejudiced because the indictment alleges that numerous files have been lost or destroyed, and that the loss of such files hinders his defense. The indictment indicates, however, that the files were destroyed by co-defendant Stoecker in 1989, so even had the government brought the charges earlier, the files would still have been lost. Moreover, Pace has failed to give any indication how the missing files would be exculpatory. See, *United States v. Canoy,* 38 F.3d 893, 902 (7th Cir.1994) (delay allegedly causing inability to subpoena exculpatory phone records held insufficient). Accordingly, the court concludes that Pace has failed to demonstrate actual and substantial prejudice sufficient to clear the first hurdle.

■ Perhaps recognizing his inability to establish actual and substantial prejudice, Pace argues that the lengthy delay results in a presumption of prejudice pursuant to the Supreme Court's opinion in *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In *Doggett,* the Court generally recognized (at 2693),

> that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice alone cannot carry a Sixth Amendment claim without regard to the other *Barker* criteria, ... it is part of the mix of relevant facts, and its importance increases with the length of delay.

**2.** At oral argument, Pace's counsel argued that he is not claiming that the passage of time has impaired the ability to develop exculpatory testimony, but that the government's witnesses who will testify against Pace will not be able to recall the conversations that took place nine years ago. Of course, if Pace is correct the government will be unable to prove its case. The court fails to see how such failure of memory prejudices Pace's defense.

As is obvious from the Court's statement, *Doggett* involved a Sixth Amendment post indictment speedy trial claim. Such claims are analyzed under the standards set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Pace argues that delay is delay, and it matters not whether it is pre-indictment, as in the instant case, or post-indictment, as in *Doggett*. To the court's knowledge, only one court has accepted this premise. In *United States v. Crouch*, 835 F.Supp. 938 (S.D.Texas 1993), the court applied the *Doggett* standard of presumptive prejudice to a Fifth Amendment due process claim based on pre-indictment delay. The court dismissed the indictment because it specifically found that the defendant had both proven actual prejudice and established a presumption of prejudice based on pre-indictment delay.

The Fifth Circuit affirmed the dismissal of the indictment, not based on presumptive prejudice, but rather on the lower court's finding of actual prejudice, which was not rebutted by the government. The court of appeals specifically rejected the district court's holding that the passage of approximately eight years from the alleged commission of the crimes to the issuance of the indictment was presumptively prejudicial, stating that, "we find this reliance [on *Doggett*] misplaced as pre-indictment delay does not raise a Sixth Amendment issue, but is instead examined under due process clause of the Fifth Amendment." *United States v. Crouch*, 51 F.3d 480, 484 (5th Cir.1995).

This court declines Pace's invitation to apply the *Doggett* Sixth Amendment analysis to his Fifth Amendment due process claim. As Justice O'Connor stated in her dissent in *Doggett*, among the major evils against which the speedy trial clause is directed are "undue and oppressive incarceration" and the "anxiety and concern accompanying public accusation." *Doggett*, 505 U.S. 647 at 659, 112 S.Ct. at 2694 (O'Connor, dissenting). Neither of those concerns is present in a Fifth Amendment pre-indictment analysis. Moreover, the court notes that the Seventh Circuit has twice indicated its view that *Doggett* does not apply to Fifth Amendment pre-indictment

situations. *Anagnostou*, 974 F.2d at 942 n. 1; *Pharm v. Hatcher*, 984 F.2d at 786 n. 5.

Accordingly, because Pace has not demonstrated actual prejudice resulting from the pre-indictment delay, his motion to dismiss the indictment is denied.

## II. Motion to Dismiss Count 57 for Failure to State an Offense Under 18 U.S.C. § 215

Count 57 charges Pace with violating 18 U.S.C. § 215 (the "bank bribery" statute), which provides in relevant part:

(a) Whoever—

(1) corruptly gives, offers or promises anything of value to any person, with intent to influence or reward an officer, director, employee, agent, or attorney of a financial institution in connection with any business or transaction of such institution; or

(2) as an officer, director, employee, agent, or attorney of a financial institution, corruptly solicits or demands for the benefit of any person, or corruptly accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of such institution; . . . .

Count 57 alleges that Pace, while employed by Banker's Trust, accepted $1,000,000 from co-defendant Stoecker for falsely responding to credit inquiries from various banks regarding Stoecker and his companies. Pace argues that accepting money for responding to credit inquiries does not state an offense under the statute.

The gist of Pace's argument is that the conduct that was originally sought to be prevented by the statute is the basic "kickback" where a bank loan officer receives money from a client in exchange for approving his or her loan. *United States v. Alvarez*, 996 F.2d 1228 (9th Cir.1993).

The elements of the crime with which Pace is charged are: (1) that defendant acted corruptly; (2) in demanding or soliciting or agreeing to accept or accepting; (3) something of value; (4) in connection with the business of a financial institution; (5) of which defendant was an officer, director, em-

ployee, agent or attorney. *United States v. Tianello,* 860 F.Supp. 1521, 1523 (N.D.Fla. 1994). On its face, the conduct that Pace is alleged to have committed falls squarely within the confines of the statute. It is alleged that he acted corruptly in accepting $1,000,000 to respond falsely to credit inquiries about co-defendant Stoecker and his companies. It should be noted that Pace does not argue that responding to credit inquiries is not something done in connection with the business of a financial institution. Instead, Pace argues that the statute has never been applied to instances where defendant's conduct did not create a risk of loss to the institution for which the defendant worked. Therefore, according to Pace, the acts that he is alleged to have committed, which do not create a risk of loss to Banker's Trust's funds but rather to the funds of the inquiring institutions, cannot support a charge under the statute. The court disagrees.

First, the language of the statute is not as narrow in scope as Pace contends. While it may be true that most cases involve such conduct, the court has found nothing to indicate that the statute is intended to be limited only to instances where the funds of the employing bank are put at risk by the defendant's conduct. Defendant's argument might be more meritorious had it been brought prior to 1984, when the statute prohibited officers and employees of federally insured banks from receiving fees, commissions and gifts "from any person ... for procuring such person ... from such bank ... any loan." At that time the term "from such bank" was judicially construed to mean the officer or employee's own bank. *United States v. Gerken,* 182 F.Supp. 738, 740 (E.D.N.Y.1960). That statute, however, has been amended to prohibit not only procuring loans, but also corruptly accepting money or anything of value in connection with any business or transaction of such institution.

■ The purpose of 18 U.S.C. § 215 is to protect FDIC insured bank deposits by preventing unsound and improvident lines of credit from being made from such deposits by bank officers and directors. *United States v. Jumper,* 838 F.2d 755, 758 (5th Cir.1988). There can be no doubt that Congress's intent in enacting Section 215 was to remove from the path of bank officials the temptation of self-enrichment at the expense of the borrower or bank. *Id.* It is clear that the purpose of the section is to protect FDIC deposits from being put at risk. Because it is the deposits that are to be protected, not the individual banks, there is no reason to limit application of this section to funds at the employee's bank. The allegations against Pace, if proven, would establish that by lying to other bankers, in return for the receipt of money, he placed the FDIC secured funds at those other banks at risk. Accordingly, the court concludes that those actions would fall within the proscription of statute. Pace's motion to dismiss Count 57 is therefore denied.

### III. Motion For Severance

■ Fed.R.Crim.P. 14 provides that "if it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in any indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires." There is no bright-line rule with respect to severance. Even mutually antagonistic or irreconcilable defenses do not always warrant a severance. *Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Moreover, the Supreme Court has stated that Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of relief to be granted, if any, to the district court's sound discretion. *Id.* at 539, 113 S.Ct. at 938. According to the Supreme Court, when, as here, the defendants have been properly joined under Rule 8(b):

... a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that a jury should not consider against a defendant and that would not be

admissible if a defendant were tried alone is admitted against the codefendant. For example, evidence of the codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of defendant's guilt but technically admissible only against the codefendant also might present a risk of prejudice. Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh,* less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

*Zafiro,* 506 U.S. at 539, 113 S.Ct. at 938 (internal citations omitted).

■ In the instant case, Pace argues that there is a significant threat that the jury will not make a reliable judgment about his guilt or innocence. He essentially argues that he is likely to be found guilty by association because so much evidence will be offered against co-defendant Stoecker that is not offered against him. According to Pace, he is referenced in only twelve of the fifty-eight counts, that the vast majority of evidence will be presented only against defendant Stoecker, and that he is implicated as to only six of the twenty-five victim banks. He thus argues that the case contains massive and complex evidence, making it almost impossible for the jury to separate the evidence as it relates to each defendant, and that there is a gross disparity in the weight of the evidence against him as opposed to co-defendant Stoecker.

In response, the government states that Pace is alleged to be a major player in the scheme to defraud, and that he advanced the scheme by providing false information to vic-

tim banks. In this regard, the government asserts, without citation to any authority, that virtually all of the evidence admissible against Stoecker will also be admissible against Pace. Moreover, it argues that even if evidence is admissible only against Stoecker, the court can address that situation with a limiting instruction.

■ Under the instant circumstances, the court concludes that severance is not warranted. As the government asserts, Pace is alleged to have participated in and have been an integral part of the scheme to defraud (unlike codefendant Asta, whose motion for severance has been granted). Additionally, to the extent that some evidence may be admitted only against defendant Stoecker and not against defendant Pace, any prejudice resulting from that can be prevented by instructing the jury that it must "give separate consideration to each individual defendant and to each separate charge against him. Each defendant is entitled to have his or her case determined from his own conduct and from the evidence that may be applicable to him or her." Such instructions are sufficient to prevent any possibility of prejudice. *Zafiro,* 506 U.S. at 541, 113 S.Ct. at 939. Juries are presumed to follow their instructions. *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987).

For these reasons, Pace's motion to sever is denied.

### IV. Pace's Motion to Dismiss Counts 24, 38, and 45 for Duplicity

■ A duplicitous count is one that charges more than one distinct and separate offense. *United States v. Berardi,* 675 F.2d 894, 897 (7th Cir.1982). The law forbids charging more than one offense in one count of an indictment. *United States v. Isaacs,* 347 F.Supp. 743 (N.D.Ill.1972).

This ban on duplicitous counts stems from four concerns: (1) duplicitous indictments fail to give defendants adequate notice of the nature of the charges against which they must prepare a defense; (2) duplicitous counts threaten to subject defendants to prejudicial evidentiary rulings at trial; (3) duplicitous indictments produce trial records

inadequate to allow defendants to plead prior convictions or acquittals as a bar to subsequent prosecutions for the same offense; and (4) duplicitous indictments present a risk that the jury may have convicted a defendant by a non-unanimous jury. *United States v. Kimberlin*, 781 F.2d 1247, 1250 (7th Cir.1985).

In the instant case, Pace's argument addresses concern No. 4, the possibility of a non-unanimous jury. But here, the counts clearly do not charge more than one offense, and Pace does not argue that they do. Instead, Pace argues that the paragraphs of the individual counts are inconsistent with the initial count (which each individual count incorporates by reference) as to the acts Pace is alleged to have committed and the degree of knowledge of each defendant. A single count is not duplicitous, however, if it simply charges the commission of a single offense by different means. *Berardi*, 675 F.2d at 897. Two or more acts, each of which might constitute an offense standing alone, may be joined in a single count without offending the rule against duplicity. *Id.*

Pace argues that the individual counts allege that he and Stoecker committed various acts, without specifying which defendant did which acts. Count I, however, which is incorporated by reference into each of the remaining counts, sets forth the specific acts of each defendant. As mentioned above, the court will issue a limiting instruction that each defendant can be convicted based only on his own acts.

Pace also argues that the counts attribute different degrees of knowledge to each defendant. But a fair reading of each of the individual counts indicates that each count sets forth what Pace is alleged to know, what Stoecker is alleged to know, and that Stoecker is alleged to have additional knowledge than that of Pace. Again, any possible confusion resulting from the wording of the individual counts can be cured by a limiting instruction. Accordingly, Pace's motion to dismiss Counts 24, 38, and 45 for duplicity is denied.

## V. Motion to Exclude Evidence of Violation of Internal Operating Rules

Pace has moved to exclude evidence that his alleged conduct violated any internal operating rule of Banker's Trust or any other lending institution. The government opposes this motion, indicating that it intends to introduce evidence that the money paid by defendant Stoecker to Pace was accepted in violation of the code of conduct established for its employees by Banker's Trust.

It is beyond dispute that violation of a bank's internal operating rules or procedures does not necessarily constitute a federal offense, *United States v. McCright*, 821 F.2d 226, 229 (5th Cir.1987), and the government does not contend that it does. Pace argues that in instances where such violations of internal rules do not amount to federal crimes, introduction of such evidence relating to those violations is likely to confuse the jury into blurring the line between criminal acts and alleged ethical shortcomings. As stated by the Fifth Circuit in *McCright*, "at trial before this court, the government has repeatedly confused McCright's ethical shortcomings with the substantive proscriptions of the United States Code. McCright's many violations of the bank's internal operating procedures do not alone create offenses prosecutable in federal court." Later, the court stated "that McCright's conduct violated the bank's 'standards of conduct' we have no doubt; but we find no evidence to support a conviction under 18 U.S.C. § 656." *Id.* at 229–30.

The government argues that evidence of violation of bank rules is relevant when those rules protect an interest similar to that protected by the criminal statute. For this proposition it cites *United States v. Clark*, 765 F.2d 297, 303 (2nd Cir.1985). The court does not read *Clark* as so holding. Indeed, in *Clark*, as in *McCright*, the court noted that the

"objective of § 656 [the bank fraud statute under which the defendants in both cases had been charged], both before and after it was revised, has always been to protect federally insured banks against economic loss or the threat of economic loss attribut-

able to misconduct on the part of their employees, rather than to ensure that banks are operated in accordance with their own internal administrative rules or policies. For instance, a bank's decision solely for political reasons not to permit loans to companies doing business with the apartheid government of South Africa would hardly justify criminal prosecution under 656 of an officer who violated that policy even though it might subject him to discharge by the bank." *Clark,* 765 F.2d at 303.

The government, nevertheless argues that evidence of a violation of a bank's internal rules is "direct proof of an element of the statute: that this particular act was corrupt." The government cites *United States v. Denny,* 939 F.2d 1449, 1451–52 (10th Cir.1991), for the proposition that proving a violation of written standards of conduct established by the bank that employed the defendant is an accepted manner of proof that defendant acted "corruptly" within the meaning of 18 U.S.C. § 215. *Denny,* however, does not so hold, and indeed indicates to this court that the evidence the government seeks to introduce is inadmissible.

One of the elements of the crime for which Mr. Pace is charged is that he corruptly accepted or agreed to accept something of value intending to be rewarded in the connection with a business or transaction of a financial institution. The word corruptly is not defined in the statute. As the *Denny* court noted, however, the legislative history of the statute incorporates the standard federal jury instruction which defines the word corruptly as follows:

"An act is done 'corruptly' under this bank bribery statute if it is performed voluntarily and deliberately and performed with the purpose of accomplishing either an *unlawful* end or result or accomplishing some otherwise lawful end or result by any *unlawful* method or means."

2 E. Devitt, C. Blackmar & K. O'Malley, Federal Jury Practice and Instructions Section 26.08 (4th Ed.1990) (emphasis added). ▋ Even the government admits that the violations of Banker's Trust's internal operating procedures and ethical standards

which it seeks to attribute to Pace do not constitute unlawful conduct. Therefore, any such violation is not relevant to whether Pace's alleged conduct was or was not corrupt. Accordingly, the government is incorrect in its assertion that such evidence is direct proof of an element on the statute. Pace's motion in limine to exclude evidence of any violation of the bank's internal rules is, therefore, granted.

## VI. Pace's Motion to Exclude Evidence of Subsequent Financial Conditions or Events

Pace has moved to prohibit the government from introducing evidence of certain financial developments occurring after the acts alleged in the indictment. Specifically, Pace seeks to prevent the government from introducing evidence relating to the general financial condition of certain banks after the transactions charged in the indictment, evidence relating to financial problems of certain banks, or the failure or receivership of any lending institution, including those mentioned in the complaint.

The government contends, citing *United States v. Gresset,* 773 F.Supp. 270, 277 (Dist.Kansas 1991), that proof of loss is relevant to the defendant's intent. The court disagrees.

First, it is clear, and the government does not dispute, that indicating the general financial condition of any of the banks, without relating it to the specific acts in question, is not relevant. See *United States v. Morris,* 827 F.2d 1348 (9th Cir.1987). The government, however, apparently does not intend to present such evidence, but rather to present evidence of the specific losses caused to the victim banks by the scheme in which the defendant allegedly participated. This evidence of loss, according to the government, is relevant to defendant's intent.

▋ It is true that the *Gresset* court, without any explanation, stated that evidence of default, loss, and the benefits received by the defendant is relevant to defendant's intent and knowledge. It is also true, however, that loss to the victim bank is not an element of the offense charged. See *United States v.*

*Lemons,* 941 F.2d 309 (5th Cir.1991); *United States v. LeDonne,* 21 F.3d 1418 (7th Cir. 1994). Because proof of loss is not an element of the offense, the court is not clear on the *Gresset* court's reasoning that it is relevant to defendant's intent. In any event, the court does conclude that such evidence would be at best marginally probative and highly prejudicial to the defendants, and therefore barred by Fed.R.Evid. 403. Accordingly, the court grants defendant Pace's motion to exclude evidence of subsequent financial conditions.

### VII. Motion to Exclude Evidence of Civil Regulatory Violations

The government has indicated that it does not intend to offer any evidence of civil regulatory violations. Accordingly, Pace's motion is denied as moot.

### *CONCLUSION*

For the reasons set forth above, Pace's motions to dismiss for undue pre-indictment delay, to dismiss count 57 for failure to state an offense, for severance, to dismiss counts 24, 38 and 45 for duplicity, and to exclude evidence of civil regulatory violations are denied. Pace's motions to exclude evidence of subsequent financial conditions or events and to exclude evidence of violation of internal operating rules are granted.

### *RULING ON GOVERNMENT'S MOTION TO CLARIFY OR TO RECONSIDER*

On March 15, 1996, the court issued a memorandum opinion entitled Rulings on Defendant Pace's Pretrial Motions. As part of that opinion, the court granted Pace's Motion to Exclude Evidence of Subsequent Financial Conditions or Events. The government has now filed a motion seeking clarification by the court order of its order or, in the alternative, reconsideration of the order. Specifically, the government has requested clarification that the court's order does not prohibit it from introducing evidence to establish the precise dollar amounts that alleged victim banks lost as a direct result of the alleged fraudulent representations made by the defendants. The government asserts

that it does not intend to offer any evidence regarding the indirect or consequential damages allegedly caused by the defendants' conduct, or evidence "relating to the general financial condition of certain banks after the transactions charged in the indictment, evidence relating to financial problems of certain banks, or the failure or receivership of any lending institution, including those mentioned in the indictment."

On April 2, 1996, in open court, defendant Pace (as well as defendant Stoecker and defendant Pluhar) indicated that they had no objection to the government's motion for clarification, or its intent to introduce evidence of the specific losses caused by the alleged fraudulent misrepresentations. Accordingly, the court's March 15, 1996, opinion is clarified as follows: Pace's motion to exclude evidence of subsequent financial conditions or events is granted. The government may introduce evidence of any actual loss suffered by a victim bank, but may not introduce evidence regarding the impact of any such loss on the bank. The government may not introduce evidence relating to the financial condition of any of the banks after the transactions charged in the indictment, evidence relating to financial problems of the banks, or the failure or receivership of any lending institution, including those mentioned in the complaint.